UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
EDELMIRA GUERRERO,                                          :
                                    Plaintiff,              :
                                                            :          22 Civ. 2583 (LGS)
                    -against-                                :
                                                            :          __OPINION AND ORDER__
OGAWA USA INC.,                                             :
                                    Defendant.              :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Edelmira Guerrero brings this action against Defendant Ogawa USA Inc.

("Ogawa"), individually and on behalf of a putative class of others, for violations of the

Americans with Disabilities Act ("ADA") and the New York City Human Rights Law

("NYCHRL"), and for declaratory judgment.  Defendant moves to dismiss all claims in the First

Amended Complaint ("FAC").  For the reasons below, the motion is denied.

I.      BACKGROUND

        According to Plaintiff's verified FAC, Guerrero is a visually impaired and legally blind

person who uses screen-reader software to view websites.  On March 22, July 30 and August 10,

2022, Guerrero browsed and attempted to transact business on Ogawa's website,

https://www.ogawaworldusa.com (the "Website").  Guerrero sought to purchase a massage chair

designed, engineered and manufactured by Ogawa.  Ogawa markets its massage chairs by

touting the very high quality of their engineering and other desirable features.  The Website is

designed in such a way that it does not interact properly with screen-reader software.  On each of

Guerrero's visits to the Website, Guerrero experienced accessibility difficulties, including not

being able to add items to her "cart" or to learn the names and descriptions of Ogawa's different

products in the way that sighted customers could.

In support of its motion to dismiss the FAC, Defendant submitted the Declaration of Mark Holmes (the "Holmes Declaration"), Defendant's Chief Executive Officer and President. The Holmes Declaration describes efforts undertaken by Defendant to comply with the World Wide Web Consortium's Web Content Accessibility Guidelines ("WCAG") 2.0/2.1 at Levels A and AA, which are described as well-established guidelines for making websites accessible to blind and visually impaired people. Mr. Holmes asserts that Defendant's web development team recently rebuilt the Website in a way that removes any accessibility barriers, in compliance with those guidelines. Mr. Holmes attests that Defendant has no intention of undoing the upgrades to its Website or reinstating any of the claimed barriers on the Website.

In opposition to the motion to dismiss, Plaintiff submitted the Declaration of Robert D. Moody (the "Moody Declaration"), the President, Chief Executive Officer and founder of Forensic Data Services, who frequently testifies as an expert in the fields of information systems auditing, information security and computer forensics. Based on his evaluation of the Website, Mr. Moody attests that, as of October 21, 2022, technical barriers persisted and that many of the identified issues directly violated WCAG 2.1.

## II.    DISCUSSION

Defendant moves to dismiss the FAC on three grounds: lack of Article III standing under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2) and failure to state a sufficient ADA claim under Rule 12(b)(6). *See* Fed. R. Civ. P. 12. For the reasons below, the motion is denied.

### A.    Standing

Contrary to Defendant's argument, Plaintiff has sufficiently shown an injury in fact under the ADA and thus has sufficiently proven standing.

1.      **Standard**

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be based solely on the complaint or may rely on evidence beyond the pleadings.  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  In the latter case, "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014);[1] *accord Admiral Ins. Co. v. Niagara Transformer Corp.*, No. 20 Civ. 4041, 2021 WL 4460753, at *4 (S.D.N.Y. Sept. 29, 2021).

Article III of the Constitution confines federal courts' jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case -- in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  One of the requirements for standing is that the plaintiff suffered an "injury in fact."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *accord Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022).  This injury must be "concrete, particularized, and actual or imminent."  *Calcano*, 36 F.4th at 74.

In the ADA context, to show an injury in fact sufficient for standing to seek injunctive relief, a plaintiff must prove by a preponderance of the evidence: (1) "past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' businesses to plaintiff's home, that plaintiff intended to return to the subject location."  *Id.* (stating requirements for only a facial challenge to standing, so that past injury

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

was required to be "alleged" rather than shown).  "These considerations may assist courts in

determining whether an alleged prospective injury is sufficiently concrete and particularized.  In

particular, the focus of the third factor -- i.e., intent to return based on past visits and proximity --

is to ensure that the risk of harm is sufficiently imminent and substantial to establish standing."

*Id.* at 74-75.

      No case or controversy exists where a request for injunctive relief is moot.  A request is

moot if the defendant meets the "the formidable burden of showing that it is absolutely clear the

allegedly wrongful behavior could not reasonably be expected to recur," and that "interim relief

or events have completely and irrevocably eradicated the effects of the alleged violation."  *Klein*

*ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018).  "Generally, the

voluntary cessation of allegedly illegal conduct is not enough to render a case moot.  Otherwise,

a defendant might strategically alter its conduct in order to prevent or undo a ruling adverse to its

interest."  *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022).

### 2.    Analysis

      Through the verified FAC and Moody Declaration, Plaintiff has established facts

sufficient to support standing.  The verified FAC shows that Plaintiff experienced "past injury

under the ADA."  *See Calcano*, 36 F.4th at 74.  The verified FAC describes specific dates when

Plaintiff attempted to purchase a specific product on the Website, and the specific accessibility

barriers she encountered in doing so, which are sufficient to show "injury in fact."  *See, e.g.*,

*Sanchez v. NutCo, Inc.*, No. 20 Civ. 10107, 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022)

(discussing similar allegations and collecting cases).  The Holmes Declaration disputes the

FAC's allegations, but the Moody Declaration describes continued accessibility issues Mr.

Moody encountered during his subsequent evaluation of the Website on October 21, 2022.  The

Holmes Declaration also admits that there were deficiencies with the Website at the time Plaintiff filed her original complaint.  Unlike Mr. Holmes, Mr. Moody has expertise in evaluating websites and was retained to conduct an independent evaluation.  Plaintiff has proven "by a preponderance of the evidence" that a past injury under the ADA has occurred.  *See Tandon*, 752 F.3d at 243.  The cases cited by Defendant are distinguishable because they involved more general, conclusory allegations than those present here.  *See, e.g.*, *Mendez v. Apple Inc.*, No. 18 Civ. 7550, 2019 WL 2611168, at *2 (S.D.N.Y. Mar. 28, 2019).

Plaintiff has also shown the second requirement of the ADA injury-in-fact test by a preponderance of the evidence.  The verified FAC states Plaintiff encountered accessibility barriers on three separate occasions months apart.  These statements are supported by the Moody Declaration, which asserts that technical barriers on the Website persisted in October 2022.  Although the parties have submitted competing declarations, the Moody Declaration carries more persuasive weight for the reasons discussed above.  The Moody Declaration details deficiencies as of October 2022 that are not addressed in Defendant's submissions and is accompanied by an audit report that shows WCAG non-compliance.  Based on these findings, it is "reasonable to infer" that deficiencies in the Website "would continue" because they have continued despite Defendant's stated intention to address deficiencies.  *See Calcano*, 36 F.4th at 74.

Finally, Plaintiff has shown the intent-to-return prong by a preponderance of the evidence.  The verified FAC states that Plaintiff intends to revisit the Website once Defendant has cured the technical barriers.  It is "reasonable to infer," based on Plaintiff's multiple previous visits to the Website and the ease of accessing the Website again once the alleged accessibility barriers are removed, "that plaintiff intend[s] to return to the subject location."  *See id.*  "[T]he

central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Id.* at 75.  The verified FAC meets that standard. The verified FAC states Guerrero wants to purchase a unique, differentiated and highly valuable Ogawa product and has tried to do so on three specific dates.  The verified FAC also states that Guerrero got as far as attempting to add a product to her "cart," usually one of the last steps before completing a purchase, not merely a general difficulty in browsing.  The verified FAC shows that, but for accessibility barriers, Guerrero would make a purchase on the Website and is now unable to do so. *Cf. Monegro v. St. Insider Dot Com Inc.*, No. 21 Civ. 3339, 2022 WL 445797, at *3 (S.D.N.Y. Feb. 11, 2022) ("Although deterrence from visiting the subject location has been recognized as an injury in the Second Circuit, Plaintiff's lack of expressed interest in the subject matter of Defendant's website does not allow him to avail himself of this exception to the required intention to return.").

Defendant does not offer evidence outside the pleadings on this prong beyond noting that Plaintiff has filed many seemingly copy-and-pasted complaints regarding other websites.  Filing serial, formulaic complaints may, in practice, sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss.  But that fact does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the FAC are true. *See Delacruz v. Ruby Tuesday, Inc.*, No. 19 Civ. 10319, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020).  Because Plaintiff has submitted a verified FAC here, her factual assertions are made "under threat of the criminal sanction for perjury" and take on evidentiary weight. *See United States v. Martin*, 801 F. App'x 803, 806 (2d Cir. 2020) (summary order).

*Calcano*, and the cases cited by Ogawa, found a lack of standing where the complaint merely recited the elements of the ADA injury-in-fact test (proximity and past visits) as factual allegations supporting the plaintiff's alleged intent to return.  *Cf. Calcano*, 36 F.4th at 75-78. Those allegations are distinguishable from the specific statements in the verified FAC here that make it "reasonable to infer . . . that plaintiff intended to return to the subject" place of public accommodation.  *See id.* at 74.

Finally, Plaintiff's claims are not mooted by Defendant's efforts to cure the Website. Although Defendant's Chief Executive Officer asserted in the Holmes Declaration that, by September 2022, Defendant had removed any accessibility barriers and is continuously monitoring for such barriers, Defendant's evidence is controverted.  Plaintiff's expert in the Moody Declaration asserted that technical barriers persisted in October 2022.  Accordingly, Defendant has not met the "formidable burden" of making it "absolutely clear" that the allegedly wrongful behavior has ceased and that it "could not reasonably be expected to recur."  *See Qlik*, 906 F.3d at 224; *see also Hecht v. Magnanni Inc.*, No. 20 Civ. 5316, 2022 WL 974449, at *4 (S.D.N.Y. Mar. 31, 2022) (concluding defendant had failed to establish mootness where parties disagreed over whether defendant's website changes remedied the alleged ADA violations). Defendant's cited cases are distinguishable.  *See, e.g.*, *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197, 2020 WL 7480619, at *6 (S.D.N.Y. Dec. 18, 2020) (finding mootness where court made no mention of dueling declarations); *Diaz v. Kroger Co.*, No. 18 Civ. 7953, 2019 WL 2357531, at *3-4 (S.D.N.Y. June 4, 2019) (same); *see also Rizzi v. Hilton Domestic Operating Co., Inc.*, No. 18 Civ. 1127, 2020 WL 7000356, at *6 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 6253713 (E.D.N.Y. Oct. 23, 2020) (finding

mootness where plaintiff's affidavit asserting continued barriers predated defendant's declaration asserting lack of barriers).

Regarding the NYCHRL claim, Defendant's argument that Plaintiff lacks standing is unavailing for the same reasons discussed above. *Tucker v. Denny's Corp.*, No. 19 Civ. 9843, 2021 WL 4429220, at *2 (S.D.N.Y. Sept. 27, 2021) ("NYCHRL claims are governed by the same standing requirements as the ADA. Because [a plaintiff] has standing to sue under the ADA, [a plaintiff] similarly has standing sue under . . . the NYCHRL.").

## B.    Personal Jurisdiction

Defendant is subject to personal jurisdiction because it "transacts any business within the state" of New York and Guerrero's claims arise out of such transaction of business, under circumstances where the exercise of jurisdiction comports with constitutional due process. *See* CPLR § 302(a)(1).

### 1.    Standard

"To determine whether jurisdiction exists over a non-domiciliary, we first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023). "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023). "This inquiry usually proceeds in two steps -- an analysis of whether each defendant has minimum contacts with the forum state, and an analysis of whether exercising jurisdiction would comport with fair play and substantial justice." *Id.*

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013); *accord Simonson v. Olejniczak*, No. 22-1219, 2023 WL 2941521, at *1 (2d Cir. Apr. 14, 2023) (summary order). "Where, as here, a court relies on pleadings and affidavits, . . . the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant. We construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in its favor." *V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022). A prima facie showing "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018).

### 2.      Analysis

Defendant is subject to personal jurisdiction, as the New York long-arm statute provides a statutory basis for jurisdiction through its transacting business provision. *See* CPLR § 302(a)(1). Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 7 (N.Y. 2016). Under the first prong, "[e]xamination of a defendant's actions in New York is primarily a fact-based inquiry that requires an assessment of whether the non-domiciliary's activities in the

state were purposeful." *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1238 (N.Y. 2023). "Purposeful activities, this Court has explained, are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* To satisfy the second prong, "the plaintiff's cause of action must have an articulable nexus or substantial relationship with the defendant's transaction of business here." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017). "This inquiry is relatively permissive, and does not require causation, but merely a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim. The claim need only be in some way arguably connected to the transaction." *Al Rushaid*, 68 N.E.3d at 11.

Here, the verified FAC's statement that Ogawa offers products for sale in New York and does, in fact, ship goods to New York when a customer succeeds in ordering them, establishes that Defendant transacts business in New York under the first prong of CPLR § 302(a)(1). Defendant's Holmes Declaration confirms that "Defendant ships products to customers in all 50 states," and that a certain percentage "of products purchased on Defendant's website are shipped to New York." Even though the Holmes Declaration asserts that percentage is less than 5%, Defendant's activities in New York are still "purposeful." *See Vayu*, 206 N.E.3d at 1238. This is not the case of a "passive" website "which merely impart[s] information without permitting a business transaction." *See Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 994 (2014). By actively offering and shipping products to New York customers on its Website, Defendant "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *See D & R Glob. Selections*, 78 N.E.3d at 1176.

The statements in the verified FAC also satisfy the second prong of CPLR § 302(a)(1), as the claims at issue "arise from the transactions." *See Al Rushaid*, 68 N.E.3d at 7.  The claims of Defendant's violations of the ADA and NYCHRL "relate[]" to Defendant's offering of products to New York customers like Plaintiff.  *See D & R Glob. Selections*, 78 N.E.3d at 1176.  The disability discrimination claims depend on the assertions that Defendant provided unequal access to its offering of products to New York customers.  Thus, the legal claims are "not completely unmoored" from Defendant's transaction of business in New York.  *See Al Rushaid*, 68 N.E.3d at 11.

The cases on which Ogawa relies are inapposite.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007), addressed internet defamation.  Unlike selling goods to individuals in another state, defamation may be committed through an entirely "passive" website, on which information is posted and then merely accessible from anywhere in the world, and "one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit."  *Id.* at 250-51.  *American Girl, LLC v. Zembrka*, No. 21 Civ. 2372, 2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021), is also unpersuasive.  There, the record showed that no actual sale had been made to New York, and the defendants allegedly had a policy of *not* shipping goods to the United States.  *Id.* at *5.

Finally, the exercise of personal jurisdiction here "would comport with due process."  *See Edwardo*, 66 F.4th at 69.  Plaintiff has shown both the "minimum contacts" and "reasonableness" necessary for due process.  *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 269, 273.  Defendant had "minimum contacts" because it "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *See id.* at 269; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d

11

Cir. 2013) (finding minimum contacts where defendant "deliberately chose" to process wire

transfers using New York's banking system, the "instrument for accomplishing the alleged

wrongs for which the plaintiffs seek redress").

The exercise of personal jurisdiction is also "reasonable under the Due Process Clause."

*See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 273.  "The reasonableness inquiry

depends on five factors: (1) the burden that the exercise of jurisdiction will impose on the

defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest

in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states

in furthering substantive social policies."  *Id.*  Although litigating in New York may impose a

burden on Defendant, the burden is outweighed by the other factors.  *See id.* (finding the first

factor provided only weak support to non-domiciliary defendant given "the conveniences of

modern communication and transportation").  Because Defendant's products are available to be

sold, and are sold in New York, the forum has an interest in the resolution of the dispute and

Plaintiff has an "interest in adjudicating [her] case in the state where [she] reside[s]."  *See Eades*

*v. Kennedy, PC L. Offs.*, 799 F.3d 161, 169 (2d Cir. 2015); *see also In re Platinum & Palladium*

*Antitrust Litig.*, 61 F.4th at 273-74 (recognizing "New York's interest in adjudicating a claim

concerning manipulation on the NYMEX and the fact that the plaintiffs reside in the United

States").  The final two factors, the interests of the judicial system and the states, are neutral.  *See*

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (finding the final

two factors neutral); *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 17 (S.D.N.Y. 2022)

(same).  Thus, Defendant has failed to "present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable" under the Due Process Clause.  *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 273.

Contrary to Defendant's arguments, it is no defense to specific jurisdiction arising out of sales in New York that Ogawa did not engage in New York-specific marketing efforts or physical operations in New York.  Ogawa's decision to sell its goods in New York constitutes "purposeful availment of the benefits of transacting business in New York," and suffices for personal jurisdiction under New York's long-arm statute and the due process clause.  *See Chloe*, 616 F.3d at 170-71 (finding personal jurisdiction where defendant operated a "highly interactive website offering such bags for sale to New York consumers"); *88 Acres Foods*, 580 F. Supp. 3d at 15-16 (same); *Quezada v. U.S. Wings, Inc.*, No. 20 Civ. 10707, 2021 WL 5827437, at *7 (S.D.N.Y. Dec. 7, 2021) (defendant's "declaration that they do not solicit customers or advertise in New York . . . is not enough to immunize them from this state's jurisdiction when their products are readily available for sale to New York customers").

### C.      Failure to State a Claim

The FAC sufficiently states an ADA claim, as Plaintiff did not need to request an accommodation, and the Website is a place of public accommodation.

#### 1.      Standard

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  To state a claim under the ADA, the complaint must allege: that "(1) [the plaintiff] is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public

accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012); *accord Paguada v. Yieldstreet Inc.*, No. 20 Civ. 9254, 2021 WL 4896278, at *4 (S.D.N.Y. Oct. 20, 2021). "A plaintiff alleging disability discrimination can base her claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020).

### 2. Analysis

Contrary to Defendant's argument, Plaintiff does not need to have requested an accommodation before filing this suit because the FAC states a claim on the first two theories of liability, disparate treatment and disparate impact. *See id.* (describing the three theories of disability discrimination); *Jones v. Thomas*, No. 20 Civ. 5581, 2020 WL 5077026, at *3 (S.D.N.Y. Aug. 27, 2020) (describing the notification requirement in the context of the third theory of liability, failure to make a reasonable accommodation).

The Website is a "place of public accommodation" under the ADA. While neither the Supreme Court nor the Second Circuit has reached this issue, "the vast majority of courts in this circuit have held that commercial websites qualify as places of public accommodation independent of a nexus to a physical space." *Monegro v. I-Blades, Inc.*, No. 21 Civ. 3093, 2023 WL 2499718, at *3 (S.D.N.Y. Mar. 14, 2023) (collecting cases). The circuits are split. The Third, Sixth and Ninth Circuits require a nexus to a physical location for such an ADA violation. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905-06 (9th Cir. 2019); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1997). The First and Seventh Circuits hold that a website alone can be a place

of public accommodation under the ADA.  *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994).

This Court joins the growing number of courts within the Second Circuit in holding that a place of public accommodation can include a website, regardless of whether it has a nexus to a physical structure.  *See I-Blades*, 2023 WL 2499718, at *3-4.  The ADA defines "public accommodations" to include a list of kinds of "private entities . . . if the operations of such entities affect commerce."  42 U.S.C. § 12181(7).  Each of the twelve subparagraphs that follow contains a sub-list of specific categories followed by a residual clause.  The relevant subparagraph here lists "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment."  *Id.* § 12181(7)(E).  Even using fairly strict definitions, several other types of businesses listed in § 12181(7) exist today without brick-and-mortar locations that are open to the public, including "a restaurant" that fills only delivery orders, an online-only "bank," "pharmacy" or "travel service," and various types of online "school," particularly "undergraduate" schools.  *See id.* § 12181(7)(B), (F), (J); *see also Carparts*, 37 F.3d at 19 ("By including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that service establishments include providers of services which do not require a person to physically enter an actual physical structure.").  The more coherent common threads to draw from the specific statutory examples and impute to the general residual clause "are threads of common function, rather than ones defined by physical presence," such as "serving food, creating space for the public to gather, offering entertainment, providing education, offering banking or transportation services."  *Martinez v. Gutsy LLC.*, No. 22 Civ. 409, 2022 WL 17303830, at *4 (E.D.N.Y. Nov. 29, 2022).

15

The text of the statute alone supports the conclusion that is consistent with the evident purpose of the ADA -- to eliminate barriers to full participation by people with disabilities in public, social and economic life, which increasingly occurs online. *See Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999) ("Title III's mandate that the disabled be accorded full and equal enjoyment of the goods, and services . . . of any place of public accommodation, suggests to us that the statute was meant to guarantee them *more than mere physical access*." (emphasis added)).  This interpretation comports with recent guidance from the U.S. Department of Justice ("DOJ"), which is also persuasive in this context. *See* Dep't of Just., Guidance on Web Accessibility and the ADA (Mar. 18, 2022) (stating that "the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web"); *Martinez*, 2022 WL 17303830, at *6-7 (explaining why the DOJ's guidance is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Therefore, the FAC states a claim for relief under the ADA.  The Court retains supplemental jurisdiction over Plaintiff's NYCHRL claim. *See* 28 U.S.C. § 1367(a).

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. 31.

Dated: June 26, 2023
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE